HOLT *v.* CITY OF FAYETTEVILLE *et al.*

No. 6744.  September 25, 1929.

*F. A. Sams, W. B. Hollingsworth,* and *Aldine & Hewitt W. Chambers,* for plaintiff in error.

*Culpepper & Murphy,* contra.

RUSSELL, C. J.   On September 6, 1927, K. W. McElwaney, J. C. Huddleston, and C. C. Norton filed an equitable petition in the superior court of Fayette County.   They alleged that they were citizens and taxpayers of the City of Fayetteville, and W. W. Redwine was the mayor, and W. V. Holt, O. E. Travis, Y. H. Longino, John M. Jackson, and J. A. Lester were the councilmen of that city; that Holt was elected treasurer of the city and occupied the position until the day preceding the filing of the petition, when he was removed; that all of the funds of the city are in the possession, custody, and control of Holt; that under the act of the General Assembly approved August 18, 1927, it was the duty of the treasurer of the city to give bond in double the amount of all funds belonging to the city, with a surety company as surety, to be approved by the mayor, and that act further provided that if the treasurer should fail or refuse to make bond in ten days the mayor and council should elect a new treasurer; that more than ten days elapsed from the date that notice of the passage and approval of said act was given to Holt, and he refused to make bond as required by law, and on September 5 the mayor issued his proclamation and order declaring the office of treasurer vacant; that the order of the mayor was presented at the regular meeting of the council held on September 5, 1927, and the council failed and refused to elect a successor to Holt as treasurer, leaving the city without a treasurer or other officer authorized to accept and hold funds belonging to the city; that Holt is holding funds belonging to the city without authority, and the city is without a treasurer as required by law, and the funds are deposited in a private bank which is under no bond, and these funds are not protected by any legal priority in the event of failure of the bank, for the reason that the same is a private bank and not incorporated; that Holt is not worth the amount of the funds held by him, owns no property which can be subjected to his debt, and there is grave danger of loss and damage to petitioners and other citizens and taxpayers of the city.   The petitioners prayed for receiver to take charge of and hold all money belonging to the city, subject to the orders of the court, until a treasurer is elected and makes bond as required by law; and for

general relief, etc. Upon this petition R. E. L. Fife was appointed temporary receiver, and was directed to take charge of all funds belonging to the city and hold them subject to the order of the court.

On September 8, 1927, the plaintiffs filed an ancillary petition against W. V. Holt alone, alleging that Fife, receiver, pursuant to the order of the court, demanded of Holt all funds belonging to said city; that Holt, in complying with the court's order, gave Fife, receiver, certain checks aggregating $15,904.45, dated September 7, 1927; that the bank in which Holt as treasurer had deposited the funds belonging to the city failed and refused to pay said checks or any part thereof; and that on September 7, 1927, an involuntary petition in bankruptcy was filed, in which the bank was alleged to be insolvent. The petitioners therefore prayed that a temporary receiver be appointed to take charge of all property belonging to Holt and hold it subject to the order of the court; and that Holt be required to show cause why a permanent receiver should not be appointed. The court thereupon appointed R. E. L. Fife temporary receiver, with direction to take charge of all the property of Holt and hold it subject to the order of the court. Without waiving his right to demur, Holt filed answer both to the original and the ancillary petition. Y. H. Longino, J. A. Lester, O. E. Travis, and W. V. Holt demurred upon the grounds, (1) that the petition shows no cause of action against the defendants; and (2) that the petition does not set out any matter of equity jurisdiction, and under their allegations the plaintiffs are not entitled to the relief prayed for. Holt filed a special demurrer upon the ground that no defendants are named in the pleadings, and no venue is laid in naming defendants as residents of said county. The judge overruled every ground of demurrer, and the defendants excepted pendente lite. The City of Fayetteville, through its mayor, W. W. Redwine, and councilmen, John M. Jackson, J. A. Lester, S. L. Eastin, John A. Bunch, and B. D. Murphy, filed an intervention, (which was allowed), in which they alleged that Holt served as treasurer up to September 5, 1927, when he was removed from office; that Holt had approximately $17,000 of the funds of said city in his custody and control, and had failed and refused to pay over or account for said funds held by him as treasurer; and that the city was entitled to a judgment against him, and the property

in the hands of the receiver should be sold and the proceeds applied to this said indebtedness. They prayed accordingly. Holt demurred and moved to dismiss the intervention, averring: (1) That the intervention set forth no cause of action. (2) That there is no pending suit upon which any cause of action can be based. The original suit is fatally defective, in that the plaintiffs had no right to bring the suit. By intervening in said case the city necessarily adopted the allegations of the petition and all subsequent interventions, and is bound by the several legal consequences of these several actions and pleadings, and the city can not appeal in said case as both plaintiff and defendant. The mayor and council are defendants in the original case, and have no right to change from defendants to plaintiffs. (3) Since this intervention has been allowed by the court, it is in effect an amendment to the original petition, and its legal effect is to open the original and all subsequent petitions, amendments, and interventions to demurrers. (4) The original petition appears to be brought by private citizens against the city and its mayor and council, and it nowhere alleges that any effort has been made to get the mayor and council to take the necessary steps to obtain any redress to which petitioners in behalf of said city may be entitled. (5) Primarily, the duty of protecting the interests of citizens and taxpayers of municipalities resides with and is incumbent upon the municipal authorities, and no private citizen or taxpayer has the right to take legal action until it is shown that such authorities have failed and refused to act for the protection of municipal interests, and there is no allegation that the authorities either failed or refused to act for the protection of the city's interest and no allegation that either of the petitioners made any demand or request that the authorities take action. (6) The petition shows that the city, acting through its mayor, had taken steps to require bond but that said bond had not been given and that Holt had been removed as treasurer by said mayor; so, instead of said petition containing allegations that said authorities have failed and refused and neglected to proceed in this connection, the petition expressly asserts that said city authorities were proceeding to assert their rights. (7) There is no allegation of the duty or any definition of the duties of the treasurer of the city, nor are such duties defined in the charter. (8) Unless the intervention of the mayor and council and the

city adopts all of the allegations of the petition and the subsequent petitions, amendments, and other interventions, then said intervention is wholly insufficient to set forth any cause of action against this defendant. This demurrer was overruled, and Holt excepted. Error was also assigned upon the exceptions pendente lite.

There is a motion to dismiss the writ of error, upon the grounds: (1) The bill of exceptions contains no sufficient assignment of error, as required by law; and does not plainly and specifically set forth the errors alleged to have been committed, as required by law. (2) It appears that the case is still pending in the court below and no final judgment has been rendered therein, and that the decision or judgment complained of, if it had been rendered as contended for by the plaintiff in error, would not have been a final disposition of the cause or final as to any material party thereto. Under the rulings in *Cunningham* v. *Faulkner,* 163 *Ga.* 19 (135 S. E. 403), and *Bennett* v. *Benton,* 162 *Ga.* 139 (133 S. E. 855), and cit., the assignment of error is sufficient. Had the petition and intervention been dismissed, as the plaintiff in error moved the court to do, and had the judgment of July 14, 1928, been rendered as the plaintiff in error claimed, it would certainly have been a final disposition of the case as to him. So the motion to dismiss the writ of error is overruled. The judgment which the plaintiff in error sought to procure by the dismissal of the petition in the lower court would have been final as to him and apparently a final disposition of the cause; and so he had the right to file the bill of exceptions in the present case, under the provisions of section 6138 of the Civil Code of 1910. He assigned error upon exceptions pendente lite allowed by the court at a term previous to that at which the final judgment was rendered, and in such exceptions recited that to the ruling made he "then and there excepted, now excepts, and assigns said ruling as error as being contrary to law." This assignment of error was sufficient, and the assignment of error in the bill of exceptions upon the exceptions pendente lite is sufficient.

■ In our view of this case the errors presented by the exceptions pendente lite are controlling, and the judgment, if it had been rendered as contended for by the plaintiff in error, would have effected a final disposition of the cause. If we are correct in this view, all further proceedings in the case were nugatory, and noth-

ing else presented by the writ of error should be considered. The contention urged is that no cause of action or ground for the intervention of a court of equity at the instance of the plaintiffs appears. This raises the question whether McElwaney and his associate plaintiffs, in their capacity merely as citizens and taxpayers of the City of Fayetteville, can maintain this action under the circumstances detailed in the petition. It is our opinion that a citizen can not complain of wrongs to a municipality, any more than a stockholder in a private corporation can complain under similar circumstances of an omission of the officers and directors of such corporation to do what stockholders think is proper, without first demanding or requesting that such officers and directors themselves institute proper proceedings. If Holt, who had been removed as treasurer, was liable to pay over to the municipality any funds in his hands, it was the duty and function of the municipality to request a delivery of such funds and stipulate the terms of delivery. If Holt, the former treasurer, refused to account for the funds in his hands and deliver them, it was the duty of the municipality to proceed to employ an appropriate remedy for the recovery of these municipal funds for municipal uses only. The petitioners, as mere citizens and taxpayers, had no right to use any of the funds said to be in the hands of Holt for any purpose; nor had they a right to apply for a receiver in order to maintain the status quo, unless the mayor and council had refused to take any steps in that direction, if indeed they would have been entitled then, though in those circumstances the case would have been altogether different from the one before us. In the case at bar, according to the allegations of the petition, the notice removing Holt and declaring his office vacant was passed at a meeting of council held on September 5; and because a new treasurer was not elected at that meeting, petitioners filed their bill on September 6, and on that day R. E. L. Fife was appointed temporary receiver. The ancillary petition was filed on September 8, and in it the petitioners asked the appointment of a receiver "to take charge of all property belonging to said W. V. Holt and hold same subject to the order of the court," and Fife was so appointed and ordered to take charge of all of Holt's property on the same day.

It will thus be seen that the ancillary petition presents the same question as the original petition in aid of which it was filed, as

well as the question whether citizens and taxpayers of a municipality have a right to have a receiver appointed to take charge of the property of an alleged defaulting officer of such municipality to prevent anticipated loss to the municipality. In this case the facts are not that strong, because it can be inferred from the allegations of the ancillary petition that the treasurer might not have been a defaulter. The removed treasurer delivered to Fife, the receiver, checks amounting to nearly $16,000 and payment of the checks was refused by the bank. Without any further statement it might well be inferred that the bank did not pay the checks for the reason that Holt did not have sufficient funds. But immediately in connection with the allegation as to the presentation of the checks it is stated in the ancillary petition that the bank, after declining to pay the checks, on the same day was placed in bankruptcy. Construing the allegations of the ancillary petition most strongly against the pleader, with the inference that Holt had on deposit as much money as the amount of his checks, and that the only reason why the checks were not paid was the insolvency of the bank, it is not established that the treasurer was in fact a defaulter, even though it might be shown in a proper action that he was nevertheless liable for the moneys deposited by him in the bankrupt bank. We are of the opinion that the court erred in overruling the demurrers, especially that ground that stated that the petition set forth no cause of action in the plaintiffs. It is not alleged that any demand or request had been preferred by these petitioners to the mayor and council of Fayetteville for the purpose of inducing them to take similar action to that proposed by petitioners. It could not properly be inferred, from the fact that the mayor and council did not elect a treasurer at the very meeting at which they declared Holt's tenure of office terminated, that they would decline or fail to take appropriate steps to recover any money in the hands of Holt or any other person which rightfully belonged to the municipality. While it is not probable, it is possible that the mayor and council may have foreseen the probable result of the present petition, and its fruitlessness in the attempt to reach the funds which were then known, as appears from the petition, to be in the possession of the Bank of Fayetteville. See *Bush* v. *Bonner,* 156 *Ga.* 143 (118 S. E. 658). Certainly it can not be said that a delay of two or three days in proceeding to elect another treasurer

is sufficient evidence that the proper officers of the municipality would not take appropriate steps to recover the money, for the safe custody and proper expenditure of which they were responsible by law.

The fact that it does not appear from the petition that the petitioners were subject to suffer any special or peculiar injury affords another reason why the demurrer should have been sustained. This case is similar to that of *Sanders* v. *Ballard,* 160 *Ga.* 366 (127 S. E. 851), in which it was held: "No citizen or taxpayer, as such, has the right to institute in his own name an equitable petition against a public officer acting within the scope of his authority for or in behalf of the State of Georgia, unless it should appear that the public duty was one owing to individuals, and unless it is shown that the petitioner has suffered some special and peculiar injury from the wrongful act of which he complains." The matter was aptly summed up by Mr. Justice Fish in a quotation from Mechem on Public Officers, § 600, which he approvingly quoted: "And to sustain an action by a private individual against a public officer, it must not only appear that the duty violated was one owing to individuals, but the individual suing must show some reason why he singles himself out as the party injured. In other words, he must show that he, as distinguished from individuals in general, has suffered some special and peculiar injury from the wrongful act of which he complains." *Cannon* v. *Merry,* 116 *Ga.* 291, 293 (42 S. E. 274). In *Peeples* v. *Byrd,* 98 *Ga.* 688 (25 S. E. 677), Mr. Justice Lumpkin said, in giving the reason why the defendant's demurrer should have been sustained, "Unless the conclusions we have reached are correct, any taxpayer of the State could set himself up as the *censor morum* of the Governor and other public officers of the State, and undertake to supervise their official action as to matters in which he had no personal interest whatsoever." The case of *Reid* v. *Eatonton,* 80 *Ga.* 755 (6 S. E. 602), was cited as holding "that a taxpayer of a town had no right to call in question the constitutionality of an act authorizing an issue of bonds, when in his petition he entirely failed to allege any damage or injury that would accrue to him by reason of the issuance and sale of such bonds." As further said by Mr. Justice Lumpkin, it is to be presumed that officers will take the proper care of public interests with the disposition of which they are

specially entrusted. "When a wrong is threatened against the whole body of a corporation, the remedy is pre-emptory within the corporation itself, and a single corporator can proceed only upon refusal of the governing body to act." Whiting v. Sheboygan &c. R. Co., 25 Wis. 167 (3 Am. R. 30); Pierce v. Hagans, 79 Ohio St. 9 (86 N. E. 519, 36 L. R. A. (N. S.) 25). See also *Douglas* v. *Board of Education,* 164 *Ga.* 271 (138 S. E. 226).

It was error to overrule the demurrer.

*Judgment reversed. All the Justices concur.*