## CANNON *v.* MONTGOMERY.

No. 11782. MAY 15, 1937. REHEARING DENIED JULY 10, 1937.

*M. J. Yeomans, attorney-general, Dave M. Parker* and *O. H. Dukes, assistant attorneys-general,* for plaintiff in error.

*Martin, Martin & Snow,* contra.

RUSSELL, Chief Justice. W. P. Montgomery filed a petition against W. J. Cannon, praying that the defendant be temporarily and permanently "enjoined from remaining on said property or in the house located thereon." The plaintiff alleged that he was the owner of certain described lands lying along and west of the Ocmulgee River in Bibb County and particularly in the river swamp, which lands embraced what is known as the "brickyard lakes;" that there is located on said lands a brick dwelling-house; that on December 15, 1936, the defendant, although he had no legal right upon the premises, and without any just claim or right, broke open the door thereto and entered the same; that immediately thereafter the plaintiff requested the defendant to vacate the premises and to leave his land, which defendant re-

fused to do; that defendant is insolvent and unable to respond in damages for his illegal acts; that plaintiff is engaged in farming and in stock raising on his said land, and such house is needed as a residence for his employees; that plaintiff is engaged principally in raising hogs, and made all preparations to commence building hog-houses and fencing in and around this house, and defendant's unlawful entry and occupancy makes it impracticable for plaintiff to commence such work; that plaintiff's employees are unwilling to attempt to move in this house so long as defendant occupies it; that plaintiff is without an adequate remedy at law, and can only obtain relief for defendant's unlawful seizure in equity; and that at the time of defendant's unlawful entry plaintiff was in possession of said premises. The judge granted a temporary restraining order. The plaintiff amended his petition by adding a paragraph setting up "that said defendant did not enter said house for the purpose of inhabiting the same, but, without authority, is attempting to pose as a watchman or guardian of said property, including said house," and by striking from the prayer in the petition the words "from remaining on said property or in the house located thereon," and inserting in lieu thereof the words "from interfering with petitioner's use and enjoyment of said house and said premises, and that he be restrained and enjoined from breaking the locks of said house or entering the same." The defendant filed his answer in which he denied the substantial allegations of the petition, and set up that he was rightfully in possession of the house and premises as an employee of the Game & Fish Department of this State, which held a valid lease thereon; that the plaintiff had purchased said premises subject to the rights of the State under said lease; and that the defendant used said house to sleep in while taking care of the premises. He filed also demurrers general and special. The attorney-general and two of his assistants, as State officials, filed the plea and answer and demurrers for the defendant, represented him on the interlocutory hearing, and sued out the writ of error in this case.

On interlocutory hearing the following appeared from the evidence: The Georgia Rural Rehabilitation Corporation, one of the United States governmental bureaus, purchased certain farm lands or acreage in Bibb County, approximating 400 acres, and

lying west of the Ocmulgee River, which included a series or chain of small lakes, known as the "brickyard lakes," which lay near or in the river swamp, and which had formed in the pits from which clay had been taken many years ago in the manufacture of bricks by the A. T. Small Brick Company, by river water overflowing therein. Thereafter, on July 30, 1935, this corporation executed a lease agreement with the Department of Game and Fish of Georgia, whereby that department acquired a leasehold interest or estate in about 70 acres of this land, including such lakes, for a period of ten years, with privilege of renewal, provided the use, occupancy, maintenance, and operation of the property was mutually satisfactory, "for public use as a fish hatchery and recreation center." This contract also provided that "Failure on the part of the lessee to maintain, operate, and/or conduct the project as herein referred to, and to properly supervise its maintenance, operation, and use, shall constitute a breach hereof; in which event lessor shall have the right to terminate this lease and take possession of said premises." Said Federal bureau, having determined that the entire acreage purchased by it was not suitable for the purposes for which it had acquired the same, on December 24, 1935, executed a warranty deed conveying to the plaintiff the tract of 400 acres previously acquired by it in Bibb County. This deed recited that it was made subject to the lease, above referred to, between the grantor corporation and the Department of Game & Fish of this State. There was located on the land so leased a brick dwelling-house; and at the time Montgomery acquired title to the entire tract, subject to the lease, an employee or agent of the State Department was in charge of the part of the premises leased by it, as a sort of caretaker and watchman, and used and occupied said dwelling-house. Immediately upon the execution and delivery of this deed, Montgomery took possession of the land conveyed, with the exception of that leased to the Game and Fish Department. Although the plaintiff contends and testifies that the State Department has abandoned its project of a fish hatchery or recreation center on these premises, the State Department contends that this is not the case, but that while extensive development work had not yet been carried out, it was using said lakes to propagate certain fishes that naturally inhabited them, had taken some out for distribution, that it intended using the same,

and that the defendant stayed upon the premises and looked after the same for the State Department as an employee and agent thereof. The judge "ordered, that, until the case is tried before a jury, the defendant is restrained and enjoined from interfering with the plaintiff's use of said property and from breaking the locks on said house or entering into the same." At the same time the judge overruled the demurrer to the petition as amended. The defendant excepted, assigning error on both orders.

■ A suit can not be maintained against the State without its statutory consent. This general rule can not be evaded by making an action nominally one against the servants or agents of a State, when the real claim is against the State itself and it is the party vitally interested. Therefore, generally, where a suit is brought against an officer or agency of the State with relation to some matter in which the defendant represents the State in action and liability, and the State, while not a party to the record, is the real party against which relief is sought, so that a judgment for plaintiff, although nominally against the named defendant as an individual or entity distinct from the State, will operate to control the action of the State or subject it to liability, the suit is in effect one against the State. *Western Union Telegraph Co.* v. *W. & A. R. Co.,* 142 *Ga.* 532 (83 S. E. 135) ; *Peeples* v. *Byrd,* 98 *Ga.* 688 (25 S. E. 677) ; *Printup* v. *Cherokee R. Co.,* 45 *Ga.* 365 ; *Georgia Military Institute* v. *Simpson,* 31 *Ga.* 273 ; *Fowler* v. *Rome Dispensary,* 5 *Ga. App.* 36 (62 S. E. 660). "If, however, the sole relief sought is relief against the State officers, it is maintainable. Such it is if it seeks compensation for a past wrong, recovery of possession of property wrongfully withheld, constituting a present wrong, or an injunction against a threatened wrong such as equity will enjoin." L. & N. R. Co. *v.* Bosworth, 209 Fed. 380, 401. A suit may be maintained against officers or agents personally, because, while claiming to act officially, they have committed or they threaten to commit wrong or injury to the person or property of plaintiff, either without right and authority or contrary to the statute under which they purport to act. Although a defendant may assert that he acted officially and on behalf of the State, a suit of this class is not a suit against the State, whether it be brought to recover property wrongfully taken or held by defendant on behalf of the State. A suit against a

State officer because of his unauthorized and illegal acts, for instance, where he is acting in derogation of the express purpose and intent of the State for which he is purporting to act, as where an officer of the State is authorized and directed by law to acquire and hold lands under a lease for the purpose of maintaining a fish hatchery, his actions in so doing would be the acts of the State; but where such officer acts contrary to and derogatory thereof, his acts are illegal and unauthorized, and a suit against him to recover damages, for an injunction, or to compel him to obviate the effect of his actions in the premises, would not be an action against the State. See 59 C. J. 307-310, and cit.; *Dennison Mfg. Co.* v. *Wright*, 156 *Ga.* 789 (120 S. E. 120); Fitts v. McGhee, 172 U. S. 516 (19 Sup. Ct. 269, 43 L. ed. 535); Cunningham v. Macon &c. R. Co., 109 U. S. 446 (3 Sup. Ct. 292, 609, 27 L. ed. 992); Poindexter v. Greenhow, 114 U. S. 270 (5 Sup. Ct. 903, 962, 29 L. ed. 185); Public Service Co. v. Corboy, 250 U. S. 153 (39 Sup. Ct. 440, 63 L. ed. 905); W. U. T. Co. v. Andrews, 216 U. S. 165 (30 Sup. Ct. 286, 54 L. ed. 430); Croom v. Pennington, 59 Fla. 473, 475 (52 So. 957). So in a case where property is conveyed to the State Department of Game and Fish for a term of ten years, with privilege of renewal at the expiration thereof, for use by such department as a fish hatchery and recreation center, with the stipulation that should the State abandon the use thereof its rights under the lease would be forfeited, and the plaintiff acquires a tract of land, including that so leased and conveyed to the State Department, subject to such contract or lease, such plaintiff may, upon a breach of such condition or non-performance thereof, working a forfeiture, maintain proper proceedings to recover possession of the property against the State Department or the official thereof holding the same, without the statutory consent of the State. In such a case the plaintiff has a right to treat the contract forfeited and sue for possession, and such action could not be defeated on the ground that it is a suit to enforce a contract against the State. See Imperial &c. Co. v. Cabell (Tex.), 179 S. W. 83, 90; Weyler v. Gibson, 110 Md. 636 (17 Ann. Cas. 731, 73 Atl. 261); Tindal v. Wesley, 167 U. S. 204 (17 Sup. Ct. 770, 42 L. ed. 137); Richardson v. Liberty Oil Co., 143 La. 130 (78 So. 326). See also 59 C. J. 310, 313, §§ 465, 467, and cases cited in notes. In Land Corporation v. Long Island

State Park Com., 243 N. Y. 15 (152 N. E. 451), it was held that this doctrine applied, not only to actions for recovery of possession of property wrongfully held by the State or one of its departments, but to any action to enforce real rights, such as suits to enjoin a State department from interfering with the plaintiff's right of possession. However, this doctrine is true only to the extent that the court would have no jurisdiction to enter any decree further than the particular subject-matter was concerned, and affecting the plaintiff and defendant and the property, and not affecting the State or rendering it liable outside of the return of the property involved. See 59 C. J. 314, 315, and cases cited under note 6.

█ While the order granting the injunction in this case recites, that, "until the case is tried before a jury, the defendant is restrained and enjoined from interfering with the plaintiff's use of said property, and from breaking the lock on said house or entering the same," the evidence is that defendant was using and occupying a portion of this property and the house involved as an employee of the State Department of Game and Fish, in the capacity of a caretaker, who legally obtained possession thereof under a lease with plaintiff's predecessor in title and subject to which plaintiff acquired his title, and that the plaintiff is claiming that the rights of the State Department have been lost and forfeited because of nonuser of the premises as a fish hatchery and recreation ground and abandonment thereof; whereas the State Department claims that it has neither abandoned said premises nor ceased its use thereof for the purposes for which it acquired the same, and that its rights have not been lost or forfeited by nonuser, and therefore the effect of the court's order is to evict the defendant employee and through him the State Department of Game and Fish from property to which it asserts a claim and right of possession, and to declare said lease forfeited and void, and to deliver said premises to the plaintiff. "An injunction may only restrain; it may not compel a party to perform an act. It may restrain until performance." Code, § 55-110. "An injunction dispossessing one party and admitting another to possession is equivalent to a mandatory injunction. Injunction is not available for the purpose of accomplishing an eviction, or to prevent interference with realty by one already in possession."

█

594

*Beck* v. *Kah,* 163 *Ga.* 365 (136 S. E. 160), and cit.; *Russell* v. *Mohr-Weil Lumber Co.,* 102 *Ga.* 563 (2) (29 S. E. 271); *American Oil Co.* v. *Hulme,* 180 *Ga.* 768 (180 S. E. 768), and cit.; *Burns* v. *Hale,* 162 *Ga.* 336 (133 S. E. 857), and cit. Applying to the facts of this case the principles above stated, the court erred in granting the injunction. This case does not fall within the rule announced in *MacKenzie* v. *Minis,* 132 *Ga.* 323 (63. S. E. 900, 23 L. R. A. (N. S.) 1003, 16 Ann. Cas. 723), and *Rosser* v. *Styron,* 171 *Ga.* 238, 240 (155 S. E. 23), and cit.

*Judgment reversed. All the Justices concur.*